493 P.2d 691 (1971)
C. B., and J. T. B., a Child, by and through D. B., his next friend and Grandfather, Appellants,
v.
The PEOPLE of the State of Colorado, in the Interest of J. T. B., a Child, Petitioners-Appellees, and
Concerning J. B., Respondent-Appellee.
No. 71-098.
Colorado Court of Appeals, Div. II.
November 30, 1971.
As Modified on Denial of Rehearing December 21, 1971.
Certiorari Denied February 22, 1972.
Beacom, Caskins, Ott & Kirkwood, Edward L. Kirkwood, Westminster, for appellants.
Ralph G. Torres, Denver, for petitioners-appellees.
Daniel, McCain & Brown, Leonard H. McCain, Brighton, for respondent-appellee.
Selected for Official Publication.
COYTE, Judge.
J. T. B. was born July 30, 1970, as the illegitimate son of the mother, J. B. A petition *692 was filed by the Adams County Welfare Department on September 18, 1970, seeking to have J. T. B. declared a neglected and dependent child in accordance with 1967 Perm.Supp., C.R.S.1963, 22-3-1 et seq. The petition stated "that said child lacks proper parental care in that he is illegitimate and in the care of his mother who is failing to provide proper or necessary subsistence, medical care or other necessary care; that the mother is emotionally unstable; and that the environment is injurious to his welfare." (Emphasis added.)
At the time set for the hearing on October 5, 1970, J. B., who was under the age of 18, requested the appointment of an attorney as guardian ad litem and legal counsel to represent her. This was done and the matter was reset for October 28, 1970. J. B. was not present for the hearing on October 28th but her court-appointed attorney and her father, C. B., were present.
In the order entered, the court stated:
"From statements of counsel, Miss Scanlon [welfare case worker] and C. B., it appears the natural mother has left her father's home and her whereabouts for two months or more have been unknown. The child is illegitimate and the natural father has not acknowledged and is not supporting the child; that the child is dependent and neglected and that the petition should be sustained."
The custody of the child was awarded to Adams County Department of Public Welfare, but the custodial care was given to C. B., with said custody to continue until further order of court.
The court then directed that the petition be amended to include the allegation, "that the parental rights of J. B. should be terminated," and directed that the hearing on the amended petition be set for November 30, 1970.
The record reflects that C. B. and the attorney appointed to represent J. B. were present in court when the above order was entered, but J. B. was not present. At the hearing on November 30, 1970, the attorney appeared as did a case worker for the Adams County Department of Public Welfare. There is no showing that J. B. was ever contacted by the attorney or that she had any notice of the hearing. There is no record of any communication between the attorney and J. B. The court then entered its order which provided, in part, as follows:
"[T]hat * * * she [J. B.] has actually abandoned the child to her father, who in turn has placed the child with his mother for care; that the whereabouts of the respondent mother are unknown; that the child can, if so freed, be placed for adoption in a good home; that the mother will not, in the foreseeable future, be able or willing to provide necessary maternal care for the child; that the child is illegitimate and has no paternal care. The Court
FURTHER FINDS that C. B., maternal grandfather, wishes to retain custody of the child and believes he can offer it a proper home and care; that Mr. B. is himself without a wife and that the child, if left with him, would have to be reared by Mr. B's mother, or a combination of the grandfather and great grandmother; that in any event, the child would not have the benefit of a stable two-parent home which could be offered by adoptive parents. It is
ORDERED that the parental rights of the respondent, J. B., to the child named above is hereby terminated; that the custody of said child is hereby given to the Adams County Department of Welfare and said agency is hereby authorized to place the child for adoption and to consent thereto. It is
FURTHER ORDERED that C. B., who has heretofore been given custody of the said child by order of this Court, or anyone claiming custody or custodial care under him, surrender said child to the Adams County Department of Public Welfare forthwith upon demand, and the Sheriff of Adams County or the Sheriff *693 of the City and County of Denver be directed to assist the said Adams County Department of Welfare in taking the child into custody should such assistance be necessary."
Next in the record appears a minute order of the court to the effect that C. B. had failed to surrender the child to the Adams County Department of Public Welfare and that citation be issued commanding C. B. to appear and show cause as to why he should not be found in contempt.
Thereafter appears a petition for rehearing by an attorney hired by C. B., requesting a new trial, and a further petition requesting a jury trial.
The hearing on the citation, petition for rehearing and demand for jury trial was set for hearing before the court on January 25, 1971. The court at that time reviewed the file and determined that C. B., the grandfather, was not a party in interest within the meaning of the statute and had no standing to question or challenge the orders of the court. It then found C. B. in contempt of court for failure to deliver the child to the Adams County Welfare Department and sentenced him to thirty days in the Adams County jail, but ruled that C. B. could purge himself by delivering J. T. B. to the Adams County Welfare Department.
Appellant, C. B., and J. T. B., the child, by and through his next friend and grandfather, have filed this appeal and claim that: (1) the trial court erred in refusing to give status to the grandfather so as to enable him to question the rulings of the trial court; and (2) erred in interfering in the private family affairs of the grandson and grandfather upon the instigation of the department of welfare without sufficient legal reasons. We agree with appellants' contentions.
The Children's Code, 1967 Perm.Supp., C.R.S. 1963, 22-1-6(1) (a), provides:
"At his first appearance before the court, the child, his parents, guardian, or other legal custodian shall be fully advised by the court of their constitutional and legal rights, * * *."
Further, 22-1-6(4) (a) (i) provides:
"A child, his parent or guardian, or any interested party may demand a trial by a jury * * *."
and 22-3-17 provides:
"New hearing authorized.(1) A parent, guardian, custodian, or next friend of any child adjudicated under this article, or any person affected by a decree in a proceeding under this article, may petition the court for a new hearing on the grounds specified in rule 59 of the Colorado rules of civil procedure."
The grandfather, C. B., had status to appear before the court. The Children's Code has not changed the basic law of the State of Colorado as set forth in Diernfeld v. People, 137 Colo. 238, 323 P.2d 628, that a grandparent to whom the child has been entrusted for care has status to appear and protest the actions of the court relative to the child. This right was not taken away by the Children's Code and it was error for the trial court to rule that C. B. had no status to appear and protest the decisions of the trial court relative to the child.

II.
Having determined that the grandfather had status to appear and protest, we next proceed to the order entered declaring the child neglected and dependent, severing parental rights, and holding C. B. in contempt of court for failure to deliver the child.
At the hearing on the contempt violation, motion for new trial and demand for jury, counsel for the grandfather advised the court that he had been advised by the grandfather that there had not been a transcript of the testimony taken at the prior hearings. To this remark, the court stated:
"I would be a little surprised if that were true. It is possible, I suppose, but I would be surprised. Yes, well, he has been here at all the hearings." *694 Perm.Supp. 1967, C.R.S.1963, 22-1-7(2), provides:
"A verbatim record shall be taken of all proceedings which might result in the deprivation of custody, as defined in section 22-1-3(9). A verbatim record shall be made in all other hearings including any hearing conducted by a referee, unless waived by the parties in the proceeding and so ordered by the judge or referee."
In this case not only was there deprivation of custody but parental rights were severed. In reviewing the record in the first instance, there was certified to us only the colloquium between the court and C. B.'s attorney with some interjections by C. B. and his father. We then directed the Clerk of the District Court of Adams County to have transcribed and certified to us a complete transcript of all testimony taken at all hearings. The court reporter then certified that there had been no transcript made of the hearings on September 18, October 28, or November 30.
It is noted that all orders of court entered are prefaced by the court having "listened to the statements," or words to that effect. At no place does the court refer to evidence, and apparently it couldn't as there is no record of any testimony having been taken in this case.
There is no evidence or showing that the home environment which C. B. might provide for the child would be unsatisfactory. At oral argument before this court, the parties agreed that the State had never expended any funds for the support or maintenance of this child.
1967 Perm.Supp., C.R.S.1963, 22-3-6(5) provides:
"When the court finds that the allegations of the petition are not supported * * * by a preponderance of the evidence in cases concerning neglected or dependent children, the court shall order the petition dismissed and the child discharged from any detention or restriction previously ordered. His parents, guardian, or other legal custodian shall also be discharged from any restriction or other previous temporary order."
In this case, there was a verified petition which was filed by a case worker of the Adams County Welfare Department. This petition, according to the record, was not supported by any testimony or exhibits.
It is argued that the petition for new trial and demand for jury trial were filed too late, and thus were not in accordance with C.R.C.P. 59(b). We reject this argument. According to the record, there has never been any trial held or evidence presented in support of the dependency petition. Hence, no violation of C.R.C.P. 59(b) could have occurred.
The judgment and orders of the trial court are reversed and the cause remanded with directions that the trial court shall order the dependency petition dismissed, the child discharged from any detention or restriction previously ordered, and that the contempt order imposed on C. B. be set aside and that he be discharged from any obligation imposed upon him by any previous order of court.
DWYER and DUFFORD, JJ., concur.